UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS K. KIEREN, JR., <br>     Petitioner, <br> vs. <br> STATE OF NEVADA ATTORNEY GENERAL *et al.*, <br>     Respondents. | 3:07-cv-00341-LRH-RAM <br><br> ORDER |

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion (#27) to dismiss. In the petition, Dennis Kieren, Jr., seeks to set aside his 1999 Nevada state conviction, pursuant to a jury verdict, of first degree murder with the use of a deadly weapon. Respondents contend that the petition is subject to dismissal as a mixed petition because Grounds 1, 2, 3, 4, 5 and 7 are not exhausted.

*Exhaustion*

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983,

987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

**Ground 1**

In Ground 1, petitioner alleges that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because the state district court allegedly erred in denying his motion for new trial based upon newly discovered evidence. Kieren based the motion upon allegedly new evidence consisting of an affidavit by a defense witness attesting that a prosecution witness allegedly had said to her before trial, *inter alia*, that he was going to testify falsely to ensure Kieren's conviction.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation.

The claim presented on direct appeal does not allege that Kieren was denied due process and does not refer to the United States Constitution in any respect.[1]

Petitioner contends that he presented a federal due process claim because the Nevada state cases that he cited on direct appeal cited to federal cases that applied federal constitutional standards and/or cited to other state cases that in turn cited federal cases that applied federal constitutional standards.

Petitioner points to the citation in his briefing to the Nevada state cases in *Hennie v. State*, 114 Nev. 1285, 968 P.2d 761 (1998), *Callier v. Warden*, 111 Nev. 976, 901 P.2d 619 (1995), and *King v. State*, 95 Nev. 497, 596 P.2d 501 (1979).

Petitioner relies, first, on his citation to the Nevada Supreme Court's discussion in *Hennie* of the standard for a new trial based upon newly discovered evidence that was outlined previously in *Callier*. The standard required that: "(1) the evidence must be newly discovered; (2) it must be material to the defense; (3) it could not have been discovered and produced for trial even with the exercise of

---

[1] #23, Ex 47, at 28-32.

reasonable diligence; (4) it must not be cumulative; (5) it must indicate that a different result is probable on retrial; (6) it must not simply be an attempt to contradict or discredit a former witness; and (7) it must be the best evidence the case admits." *Callier*, 111 Nev. at 988, 901 P.2d at 626. Although the foregoing standard makes no reference to due process or constitutional guarantees, petitioner contends that *Callier* applied federal constitutional law because *Callier* adopted "the federal standard" articulated in *United States v. Krasny*, 607 F.2d 840 (9th Cir. 1979).

However, merely because a federal criminal case discusses a standard – in this instance the standard for a new trial based upon newly discovered evidence – to be applied in federal criminal trials does not signify that the federal criminal case is applying federal constitutional law. That is, the discussion of a "federal standard" is not inherently a discussion of a federal *constitutional* standard. The *Krasny* opinion makes no reference to either due process or the Constitution in its discussion of the proper standard to be applied in federal criminal trials. Accordingly, *Hennie's* citation to *Collier* with *Collier's* citation then to the non-constitutional discussion in *Krasny* did not fairly present a federal constitutional due process claim to the Supreme Court of Nevada in Kieren's case.[2]

Petitioner relies, second, on *Callier's* citation to *Riley v. State*, 93 Nev. 461, 567 P.2d 475 (1977). Petitioner points in particular to the fact that the defendant in *Riley* maintained that his conviction had been obtained through knowing use of perjured testimony, in violation of decisions such as *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Giglio v. United States*,

---

[2]Petitioner intersperses within the discussion of the preceding issue a citation to *Harris v. Vasquez*, 949 F.2d 1497, 1523 (9th Cir. 1990), for the proposition that "[n]ewly discovered evidence is grounds for post-conviction relief when it bears on the constitutionality of a petitioner's conviction." #30, at 5. The 1990 opinion in *Harris* is not cited in *Hennie*, *Callier*, or the Ninth Circuit's 1979 decision in *Krasny*. (Indeed, *Harris* has *never* been cited by the Supreme Court of Nevada.) The insertion of a citation within an exhaustion argument to an opinion that was never cited even indirectly in the state court briefing is unpersuasive. Nothing in the *non-constitutional* discussion of the appropriate standard for a new trial based upon newly discovered evidence in the cases that *were* cited in the state court briefing on Kieren's direct appeal placed the state supreme court on notice that he was challenging the denial of the motion for a new trial as a denial of due process under the federal constitution.

The Court notes in passing that the pre-AEDPA *Harris* case states that "[n]ewly discovered evidence warrants federal habeas corpus relief if it would 'probably produce an acquittal.'" 949 F.2d at 1523. It is subject to substantial question whether such a standard would be applicable on habeas review under the AEDPA. That is, it is subject to substantial question whether such a standard is grounded in clearly established federal law as determined by the United States Supreme Court that has been held by that Court to be applicable to the States.

405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Petitioner posits that he also presented a *Napue-Giglio* claim.[3]

Kieren did not present a *Napue-Giglio* claim to the state courts, and he presents no such claim in federal Ground 1. A *Napue-Giglio* claim is premised upon the allegation that the State knowingly used perjured testimony. Petitioner did not allege that the State knowingly used perjured testimony on direct appeal, and this essential allegation for a *Napue-Giglio* claim also is absent from federal Ground 1. His claim instead was, and is, only that the state district court erred in denying his motion for new trial based upon newly discovered evidence. While that newly discovered evidence sought to establish that a prosecution witness committed perjury, there was absolutely no allegation that the State knowingly used any such perjury.

*Callier* cited *Riley* expressly for the proposition "that 'a conviction obtained by *the knowing use of* perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Callier*, 111 Nev. at 989, 901 P.2d at 627 (emphasis added). When the constitutional claim referenced in a cited case is not the same federal claim that the petitioner presents in federal court, it is established law that citation to the case is insufficient to exhaust the claim presented in federal court. *See,e.g., Shumway*, 223 F.3d at 988. *Callier's* citation to *Riley* for its discussion of a *Napue-Giglio* claim based upon the State's knowing use of perjured testimony did not exhaust petitioner's distinct and different claim that the denial of a new trial based upon newly discovered evidence deprived him of due process of law.

Petitioner relies, third, upon his citation to *Hennie* citing to *King* which in turn cited to the *Riley* case discussed above. The portion of *Hennie* referred to in Kieren's direct appeal brief referred to *King* for the proposition that newly discovered impeachment evidence may be sufficient to grant a new trial if the witness impeached was so important that impeachment would necessitate a different verdict.[4] This principle is discussed in *King* separate and apart from the discussion of a possible due process violation based upon *Riley* in a situation where "the prosecution admitted that a majority of witnesses

---

[3] #30, at 5-6 & 7, lines 5-13.

[4] #23, Ex. 47, at 29.

-4-

had committed perjury." See 95 Nev. at 500-01, 596 P.2d at 502 ("Appellant next contends . . . ."). Kieren clearly did not cite to *Hennie's* citation to *King* in a manner that in any respect fairly alerted the Supreme Court of Nevada that Kieren was presenting a federal constitutional claim that the denial of a new trial deprived him of due process.

Such tangential references to federal law in citations within citations clearly did not fairly present a federal constitutional due process claim to the state courts.

Petitioner further urges that the *State's* citation in its answering brief on direct appeal to sundry federal decisions exhausted petitioner's federal claim.

At the outset, the Court is not persuaded that the *State's* citation to cases fairly presents any federal constitutional claim on the behalf of a petitioner. Petitioner must exhaust his claims, not the State. Petitioner does not cite any apposite case law suggesting that the state courts must comb through the State's citations looking for references to federal constitutional provisions that the petitioner has not himself invoked. If the state supreme court considers a federal claim even though the claim is not presented by a petitioner, that is another matter. But the petitioner otherwise needs to himself fairly present his federal constitutional claims to the state courts to exhaust them. An exhaustion argument premised upon a *post hoc* scouring of the State's direct appeal briefing for citations applying federal constitutional law epitomizes the very antithesis of fair presentation of a federal constitutional claim.

In any event, the federal cases cited by the State to which petitioner now refers once again are cases discussing what petitioner refers to as "the federal standard" for granting a new trial based upon newly discovered evidence. Again, the discussion of a "federal standard" is not inherently a discussion of a federal *constitutional* standard. None of the cited cases discussed federal constitutional due process guarantees in this context.[5] Nor were the cases cited for constitutional doctrine. Citation to the cases would not have exhausted a due process claim even if petitioner himself had cited the cases.

Ground 1 therefore is not exhausted.

---

[5] *See United States v. Diggs*, 649 F.2d 731, 739-40 (9th Cir. 1981)(expressly applying Rule 33 of the Federal Rules of Criminal Procedure); *Baumann v. United States*, 692 F.2d 565, 578-81 & n. (9th Cir. 1982)(assuming that no substantive constitutional claim was presented but proceeding on the basis of ineffective assistance of counsel); *Shibley v. United States*, 237 F.2d 327, 331-32 (9th Cir. 1956)(reviewing for abuse of discretion under Rule 33).

*Ground 2*

In Ground 2, petitioner alleges that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because the jury instructions on self defense allegedly were improper, confusing and improperly shifted the State's burden of proof.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation.

The Court is persuaded that petitioner presented a sufficiently federalized claim in this regard in the state courts. He clearly contended that the allegedly improper and confusing jury instructions operated to shift and reduce the State's burden of proof, and he cited Nevada state case law holding that such a shifting of the State's burden of proof to the defendant violates due process. *See Barone v. State*, 109 Nev. 778, 780, 858 P.2d 27, 28 (1993).[6]

Ground 2 is exhausted.

*Ground 3*

In Ground 3, petitioner alleges that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because the state district court allegedly erred in excluding evidence of the victim's alleged violent character.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation.

The claim presented on direct appeal does not allege that Kieren was denied due process and does not refer to the United States Constitution in any respect. Petitioner contended that the evidence was admissible under N.R.S. 48.055 and that the state district court abused its discretion in excluding the evidence.[7]

Petitioner points to statements in his appeal brief that he was "testifying in support of his theory of the case which was self-defense" and that he "wished to present testimony evidence to support his self-defense theory." He cites – in his opposition memorandum in federal court – to case law

---

[6] #23, Ex. 47, at 32-34.

[7] #23, Ex 47, at 34-35.

establishing that the due process clause guarantees criminal defendants a meaningful opportunity to present a complete defense. He maintains that his "federal due process right to present his theory of defense is fundamental." He asserts: "This is the argument that he presented to the Nevada Supreme Court."[8]

The problem for petitioner, however, is that he did *not* present this argument to the Nevada Supreme Court. Merely stating that evidence was excluded that was offered in support of a defendant's theory of the case does not inherently invoke the Due Process Clause. All evidence that a defendant seeks to have introduced likely fits or should fit the description that the evidence was offered in support of the defendant's theory of the case. Petitioner instead presented only a state law claim that the evidence was admissible under Nevada state law and that the state district court abused its discretion in excluding the evidence. To fairly present a federal claim, *both* the operative facts *and* the federal legal theory upon which the claim is based must be presented to the state courts. *E.g., Castillo, supra.* Petitioner's extensive argument on a federal due process claim – years later in federal court – aside, petitioner did not present such a federal due process legal theory *in the state courts*.[9]

////

---

[8] #30, at 12-13.

[9] The cases relied upon by petitioner in this regard do not lead to a conclusion that Ground 3 is exhausted.

In *McNeil v. Middleton*, 344 F.3d 988 (9th Cir. 2003), *reversed*, 541 U.S. 433, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004), the Ninth Circuit rejected the respondents' argument that the alleged jury instruction error in question constituted merely a state law violation that did not rise to the level of a federal constitutional violation. 344 F.3d at 995. *McNeil* was addressing the merits of whether a viable due process claim was presented *in federal court*. There was no exhaustion issue raised in *McNeil*. The State often contends that a claim in fact expressly alleged as a federal claim in truth constitutes only a state law claim rather than a federal claim. The rejection of such a merits argument does not signify that the presentation of a claim as a state law claim in the state courts exhausts a federal due process claim that also might be raised on the same facts. *McNeil* clearly makes no such holding.

In *Bradley v. Duncan*, 315 F.3d 1091 (9th Cir. 2002), the Ninth Circuit similarly rejected an argument that a jury instruction error constituted merely a state law violation rather than a federal due process violation. 315 F.3d at 1098-1100. Petitioner's counsel states that the Ninth Circuit "rejected the nonexhaustion argument" in *Bradley* by stating that a petitioner was not required to cite a specific Supreme Court case or "produce a spotted calf on the precise issue at hand." #30, at 13. Counsel's statement that *Bradley* "rejected the nonexhaustion argument" is directly belied by the opinion. There was no exhaustion issue discussed in *Bradley*. The panel instead was rejecting the State's argument – *on the merits* – that the petitioner was required to cite a specific Supreme Court decision on point to carry his burden under the AEDPA standard of review. 315 F.3d at 1100-01. Such misrepresentation of case authority by counsel is, at best, not persuasive. The two other citations relied upon similarly address the merits, not exhaustion. See #30, at 13.

Petitioner next relies upon the citation in both his direct appeal brief and the Nevada Supreme Court decision to a state court decision that in turn "referenced federal case law." However, neither the sole federal decision cited in *Burgeon v. State*, 102 Nev. 43, 714 P.2d 576 (1986), nor the decisions cited in turn therein addressed a federal constitutional claim alleging a deprivation of due process from the exclusion of evidence or a denial of the right to present a defense. *See Government of Virgin Islands v. Carino*, 631 F.2d 226 (3d Cir. 1980)(addressing exclusion of the evidence under the Federal Rules of Evidence). The Supreme Court cases cited therein were cited for the harmless error standard to be applied in the event of evidentiary error, not for any such federal constitutional claim. The citation to "federal case law" in *Burgeon* therefore did not exhaust the federal constitutional due process claim now presented in this matter.

Ground 3 therefore is not exhausted.

***Ground 4***

In Ground 4, petitioner alleges that he was denied rights to due process of law and a fair trial in violation of the Fifth and Fourteenth Amendments due to alleged prosecutorial misconduct when the prosecutor asked Kieren about a prior arrest for impersonating a police officer despite a prior court ruling barring the line of inquiry.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation.

The claim presented on direct appeal does not allege that Kieren was denied due process and does not refer to the United States Constitution in any respect.[10] The mere reference to a "fair trial" did not exhaust any federal constitutional claim. *E.g., Castillo,* 399 F.3d at 999; *Shumway v*, 223 F.3d at 987.

Petitioner relies upon his citation in his reply brief to the decision in *Big Pond v. State*, 101 Nev. 1, 692 P.2d 1288 (1985), which in turn cited to *Garner v. State*, 78 Nev. 366, 374 P.2d 525 (1962), which in turn cited to *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

/ / / /

---

[10] #23, Ex 47, at 35-37.

The Court is not persuaded. Petitioner cited *Big Pond* not for any holding that prosecutorial misconduct violates due process but instead for a standard as to whether error was harmless or prejudicial.[11] *Big Pond* involved juror misconduct, not prosecutorial misconduct. *Big Pond*, in turn, similarly cited to *Garner* solely for the harmless error standard. *Big Pond* had no occasion to cite to *Garner* for any rule regarding prosecutorial misconduct because, again, *Big Pond* did not concern prosecutorial misconduct. *Garner* – in a different portion of the opinion than the portion cited in *Big Pond* for the proposition relied upon by petitioner in the reply brief – does discuss prosecutorial misconduct, and *Garner* cites to *Berger's* discussion of prosecutorial responsibility. However, nothing in the Supreme Court's 1935 *Berger* decision reflects that the Court was articulating a constitutional standard given that the decision reversed a federal conviction without expressly articulating a constitutional basis for the reversal. *See Berger*, 295 U.S. at 88, 55 S.Ct. at 633. It must be remembered in this regard that federal criminal convictions are reversed for non-constitutional as well as constitutional error. And with particular regard to prosecutorial misconduct, federal courts monitor the conduct of federal prosecutors as an exercise of supervisory power that is broader than review for constitutional error. *See, e.g., Donnelly v. DeChritoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

The Court thus is presented with a claim of exhaustion of federal constitutional claims that is premised upon the citation in a reply brief to a case for the harmless error standard that in turn cites to another case also for the harmless error standard that, in a different portion of that opinion, cites to a 1935 Supreme Court decision that discusses the duties of prosecutors in federal criminal cases without adjudicating the case on constitutional grounds. The Court is not persuaded that such murky federal law references via three degrees of separation fairly presents any federal constitutional claim to a state supreme court. The Court further is not persuaded that the reference in *Garner* to a "defendant's right to a fair trial" fairly alerted the Supreme Court of Nevada that Kieren was presenting federal constitutional claims when he cited another case for a statement of a harmless error standard that also cited *Garner* only for the statement of that standard.

---

[11] #23, Ex. 49, at 11.

1    Petitioner further relies – once again – on the *State's* citation to a federal case in its answering
2 brief.  As discussed above as to Ground 1, the Court is not persuaded that the State's citation to cases
3 fairly presents any federal constitutional claim on the behalf of a petitioner.  In any event, the State cited
4 to *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), once again for a
5 statement of a standard of harmless error.[12]  *Hastings* applied the harmless error standard in the context
6 of an alleged Fifth Amendment violation based upon prosecutorial comment upon a defense failure to
7 present evidence on an issue, which is a distinct claim from the federal claims presented in Ground 4.
8 A citation to *Hastings* for the harmless error standard would not have alerted the state supreme court
9 that Kieren was presenting federal constitutional claims such as those presented in Ground 4 even if he
10 had cited the case in this manner in his own briefing.

11   Finally, petitioner relies on the Nevada Supreme Court's citation in its order[13] to *State v. Carroll*,
12 109 Nev. 975, 977, 860 P.2d 179, 180 (1993), also for a harmless error standard which in turn cited to
13 *Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991), also for the harmless error standard
14 that in turn cited to a United States Supreme Court case for the harmless error standard.  Nothing in this
15 indirect citation, mutliple times removed, to a federal case on harmless error signified that the state
16 supreme court was adjudicating the prosecutorial misconduct claim as a constitutional claim.  Petitioner
17 further points to the citation in *Haywood* to *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d
18 353 (1970).  The latter case, however, concerned the standards for removing or restraining a disruptive
19 defendant, and *Haywood* refers to the case in a different portion of the opinion as indirect support for
20 the proposition that a prosecutor cannot refer verbally to the fact of a defendant's incarceration.  In order
21 to demonstrate exhaustion, petitioner must do more than show that some federal case on an unrelated
22 proposition was cited in a case that was cited in a case for another proposition that also was cited for
23 that different proposition in the state supreme court's order.

24   Ground 4 is unexhausted.
25   / / / /
26 _____

27   [12]#23, Ex. 48, at 23.

28   [13]#23, Ex. 51, at 3.

*Ground 5*

In Ground 5, petitioner alleges that he was denied due process in violation of the Fifth and Fourteenth Amendments when the jury was not properly instructed on the element of deliberation for first degree murder.

The state district court gave what is called the *Kazalyn* instruction. Subsequent to Kieren's trial, the Supreme Court of Nevada disapproved the *Kazalyn* instruction in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000). The state high court subsequently held in *Garner v. State*, 116 Nev. 770, 6 P.3d 1013 (2000), however, that use of the *Kazalyn* instruction did not give rise to constitutional error. The Ninth Circuit since has held that the state supreme court's rejection of such a constitutional claim is contrary to clearly established federal law as determined by the United States Supreme Court. In *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), the Ninth Circuit held as well that, subject to harmless error analysis, use of the *Kazalyn* instruction violates due process because it relieves the State of its burden of proving every element of first degree murder beyond a reasonable doubt. 503 F.3d at 909.

The briefing on petitioner's direct appeal was filed during 2001.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation.

While it is a close question, the Court concludes that petitioner fairly presented the federal constitutional claim in Ground 5 to the Supreme Court of Nevada on the direct appeal.

The Court is not necessarily persuaded that petitioner's reference to the *Garner* holding in his opening brief, standing alone, was sufficient to present a constitutional challenge.[14] A reviewing court arguably would not construe such an acknowledgment of the court's prior holding that an instruction did not violate the Constitution, without any request to revisit the issue, as presenting a current due

---

[14]Petitioner relies upon the following passage from his opening brief:

> Appellant is aware of this Court's holding in Garner v. State, 116 Nev. Adv. Op. No. 85, 6 P.3d 1013 (August 23, 2000) that the giving of the "Kazalyn Instruction" was not constitutional or plain error. This Court also noted that Garner did not object at trial to this jury instruction [whereas] in the case at bar Appellant objected to the instruction and proffered an alternative instruction that included a definition of deliberate.

#23, Ex. 47, at 38.

-11-

process challenge to the instruction. Arguably, petitioner sought to do no more at that point than to distinguish his case from *Garner*, without challenging the constitutional holding, on the basis that he had taken the requisite steps to preserve a claim of error that was not constitutional error or plain error.

However, in his reply brief, petitioner went further and stated: "Appellant was deprived of his right to a fair trial guaranteed by the Sixth Amendment of the United States Constitution when the trial court denied his proposed instruction for intention/deliberation thus reducing the State's burden."[15] While the issue remains a close one, the Court is persuaded that this statement further clarifying the claim presented on direct appeal, and articulating the federal legal theory, fairly presented the federal claim in Ground 5 to the Supreme Court of Nevada. One might quibble that petitioner invoked the "right to a fair trial" under the Sixth Amendment in state court whereas he invoked the "right to due process of law" under the Fifth and Fourteenth Amendments in federal court. However, the distinction would appear to be one without a difference of substance. The right to a fair trial is recognized as a right guaranteed by the right to due process under the Fifth and Fourteenth Amendments.[16] There further is no clear analytical distinction that sharply differentiates between a "right to a fair trial" under the Fifth and Fourteenth Amendments and a "right to a fair trial" under the Sixth Amendment over and above the specific fair-trial rights provided for in the latter amendment.[17] If there is any difference between a right to a fair trial under the Fifth and Sixth Amendments, it would appear to be a matter more of as-yet-undefined nuance rather than of substance. The Court is persuaded that, given the clarifying statement in the reply brief, petitioner fairly presented Ground 5 on direct appeal.

Ground 5 is exhausted.

---

[15] #23, Ex. 49, at 12.

[16] *See, e.g., Cone v. Bell*, ___ U.S. ___, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)("The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, . . . ."); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)("We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution. Our construction of that Clause will apply equally to the comparable Clause in the Fourteenth Amendment applicable to trials in state courts."); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)("A fair trial in a fair tribunal is a basic requirement of due process.").

[17] *Cf. Strickland*, 466 U.S. at 684-85, 104 S.Ct. at 2063 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . .")*; Caplin & Drysdale v. U.S.*, 491 U.S. 617, 633, 109 S.Ct. 2646, 2657-58, 105 L.Ed.2d 528 (1989).

***Ground 7***

In Ground 7, petitioner alleges that he was denied due process in violation of the Fifth and Fourteenth Amendments due to the cumulative effect of the prior grounds alleged in the petition.

Respondents contend that petitioner presented only a state law claim on the state direct appeal without presenting any claim of a federal constitutional violation. Respondents proceed on the premise that the other direct appeal claims all were state law claims, such that petitioner's cumulative error claim "likewise pertains to the cumulative effect of various violations of state law."[18]

Petitioner relies upon references in his opening brief on direct appeal to his "right to a fair trial" and in his reply brief to his "right to a due process and a fair trial."[19] However, again, such conclusory references to "due process" and a "right to a fair trial," detached from any articulated federal legal theory or citation to apposite cases applying the legal analysis for the federal constitutional theory, are not sufficient to fairly present a federal constitutional claim, including a claim under the Due Process Clause.[20] Petitioner's citation in the state court brief to the Supreme Court's 1935 decision in *Berger* that was discussed previously regarding Ground 4 did not alert the state supreme court that he was presenting a federal constitutional claim under the Due Process Clause. As discussed above, the *Berger* decision contains no discussion of federal constitutional law, as a federal court can overturn a federal criminal conviction under its supervisory authority based upon prosecutorial misconduct without ever considering whether the misconduct resulted in a denial of due process. *See,e.g., Donnelly, supra*. Moreover, *Berger* quite clearly did not discuss the legal analysis applicable to a federal constitutional claim of cumulative error, which is the claim presented in federal Ground 7.

---

[18] #27, at 8.

[19] #23, Ex. 47, at 39; *id*., Ex. 49, at 13-14.

[20] *See,e.g., Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005)(mention of the "federal Constitution" and "due process" did not exhaust a claim, *inter alia*, that the trial court violated petitioner's federal Fourteenth Amendment right to due process by failing to provide him personally with a copy of an amended information); *Castillo*, 399 F.3d at 999-1002 (statement that improper admission of evidence denied petitioner a fair trial in violation of the United States Constitution and blanket concluding statement in brief that alleged gross violations of petitioner's Fifth, Sixth, and Fourteenth Amendment rights required a new trial consistent with due process of law did not exhaust claim that trial court denied petitioner due process by admitting videotaped interrogation); *Shumway*, 223 F.3d at 987 (naked reference to "due process" did not exhaust claim that redaction of portions of statement to police violated petitioner's right to due process).

1  Petitioner additionally again seeks to establish that he fairly presented a claim based upon
2  content in the State's answering brief on direct appeal. As with the discussion of Grounds 1 and 4, the
3  Court is not persuaded that the State's assertions fairly present any federal constitutional claim on the
4  behalf of a petitioner. In any event, petitioner relies upon the State's reference to his "constitutional
5  right to a fair trial."[21] This phrase would not have fairly presented a specific federal constitutional claim
6  to the state supreme court even if petitioner had used that phrase in his own briefing.[22]

Similarly, the Nevada Supreme Court's terse statement that the argument "that the cumulative effect of errors denied him a fair trial lack[s] merit"[23] did not reflect that the state high court adjudicated the claim as a federal constitutional claim. The "fair trial" reference in the court's order has no more effect vis-à-vis exhaustion than the same reference in petitioner's state court briefing.

Petitioner states in this Court: "That the Nevada Supreme Court is aware of prevailing U.S. Supreme Court authority with regard to cumulative error is apparent." He then cites – in the opposition memorandum in federal court – a number of United States Supreme Court decisions applying the legal standards applicable to a federal constitutional claim of cumulative error.[24] The Supreme Court of Nevada no doubt is aware of the prevailing United States Supreme Court authority with regard to a broad spectrum of federal constitutional claims. Yet petitioner cannot establish that he exhausted a federal constitutional claim based in essence merely upon the assertion that the state supreme court "no doubt knows the law in the area." What petitioner instead must establish that he fairly alerted the state supreme court that *he* was presenting that federal constitutional claim in *his* case. Petitioner did not so.

Accordingly, subject to respondents' moving premise that Ground 7 is exhausted only to the extent that the other claims were federalized, a federal constitutional claim of cumulative error is not exhausted. On the arguments and showing made, the Court therefore holds that Ground 7 is exhausted only to the extent that the claim of cumulative error is based upon the claims in Grounds 2 and 5.

---

[21] #23, Ex. 48, at 26.

[22] See authorities cited in n.20.

[23] #23, Ex. 51, at 4.

[24] #30, at 20.

-14-

***Remaining Exhaustion Arguments***

***Alleged Futility Exception***

Petitioner contends, *inter alia*, that requiring exhaustion of the unexhausted claims would be futile because the state courts would not rule favorably on the merits of the claims or necessarily would find the claims to be procedurally barred as successive, untimely and/or barred by laches.

As this Court repeatedly has noted in prior cases, the alleged futility exception upon which petitioner relies is largely dead letter at this juncture. In *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the United States Supreme Court sharply criticized the concept that futility could excuse a failure to exhaust a claim:

> If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

456 U.S. at 130, 102 S.Ct. at 1573. In *Noltie v. Peterson*, 9 F.3d 802 (9th Cir. 1993), the Ninth Circuit questioned whether a futility exception remained viable following *Engle v. Isaac*. 9 F.3d at 805-06. The *Noltie* panel stopped short of explicitly overruling its prior futility-exception decision in *Sweet v. Cupp*, 640 F.2d 233 (9th Cir. 1981), however, because the exception would not have been satisfied in *Noltie* in any event. *Id.* Accordingly, at this point, apposite and currently viable United States Supreme Court and Ninth Circuit precedential support for the futility exception argued here is slim to nonexistent.

Moreover, petitioner's futility argument based upon the premise that the state courts allegedly likely would reject his unexhausted claims on the merits is even weaker than the futility argument rejected by the high court in *Engle v. Isaac*. Petitioner maintains that exhaustion should be excused on the basis of futility because the state supreme court rejected claims involving facts and issues that allegedly were materially identical to those underlying the unexhausted federal claims. Yet petitioner did not fairly present any federal constitutional claims to the state courts in conjunction with the factually similar claims in state court. If a state court's prior rejection of the same constitutional argument is not a sufficient basis for a finding of futility under *Engle v. Isaac*, then it follows with even greater force that a rejection of a purely state claw claim where no constitutional argument at all was

presented is not a basis for a finding of futility on the premise that the state courts now would be unsympathetic to the federal claim. If a habeas petitioner could avoid the exhaustion requirement after presenting only a purely state law claim to the state courts merely by, figuratively, simply throwing up his hands and saying that it now would be futile to present a federal constitutional claim on the same facts, the statutorily-mandated exhaustion requirement would be wholly eviscerated.[25]

This Court similarly has repeatedly rejected variations on the argument that exhaustion would be futile on the basis that the Nevada state courts necessarily would hold that a federal claim would be procedurally barred. The Court has done so particularly where, as petitioner does here, the petitioner nonetheless expressly declares that he can overcome the procedural bars and seeks leave – upon overcoming the exhaustion issue on the premise that the claims would be procedurally barred – to then brief the procedural default issue in federal court to maintain that the claims should not be found to be procedurally defaulted.[26]

In this regard, the Court notes that the standards for excusing a procedural default are substantially the same in Nevada state court as they are in federal court. Accordingly, this Court will not hold the claims to be exhausted on this basis in the absence of an unequivocal stipulation by petitioner that the unexhausted claims in fact would be denied on state procedural grounds if he returned to state court to present the claims. Any holding of exhaustion on this basis further will be subject to

---

[25] Further, a purely state law claim does not necessarily present "issues materially identical" to a federal constitutional claim based upon the same facts.

Petitioner relies upon the Third Circuit's decision in *Lines v. Larkins*, 208 F.3d 153, 162-63 (3d Cir. 2000), for the proposition that the exhaustion requirement may be avoided on the basis of futility if the state supreme court already has rejected a claim involving materially identical facts and issues. The *Lines* opinion actually was not decided upon that proposition, and *Lines* referred to the proposition in listing a number of possible ways of avoiding the exhaustion requirement. *Lines* cited the First Circuit decision in *Allen v. Attorney General of Maine*, 80 F.3d 569, 573 (1st Cir. 1996), in support of the proposition. Neither *Lines* nor *Allen* discuss the governing United States Supreme Court authority in *Engle v. Isaac*. Neither *Lines* nor *Allen* is binding authority within the Ninth Circuit. This Court follows the governing authority from the United States Supreme Court over authority from outside the circuit.

The *Lines* opinion did base futility upon the probable application of state procedural bars. The Third Circuit's analysis has less relevance in the context of Nevada state post-conviction procedure, for the reasons discussed in the text, *infra*.

[26] See #30, at 25.

respondents' ability to then seek dismissal of the claims on the basis of procedural default. Such an unequivocal stipulation, to in truth be unequivocal in light of the application of the procedural default rules under Nevada state post-conviction procedure, must include concessions that: (1) petitioner cannot avoid dismissal of the claims in the state courts because he cannot demonstrate cause and prejudice in the state courts to overcome the state procedural bars;[27] (2) petitioner cannot avoid dismissal of the claims in the state courts because he cannot demonstrate in the state courts that the alleged constitutional violation has probably resulted in the conviction of one who is actually innocent and cannot thereby overcome these procedural bars;[28] and (3) the procedural bars otherwise are now consistently applied by the Nevada state courts, such that it is not possible that the state courts, as a discretionary matter, would consider the claims despite the procedural default and despite a failure to demonstrate either cause and prejudice or actual innocence. In the absence of such concessions, the Court will not hold that there is no possibility that the unexhausted claims would be considered by the state courts.[29]

The Court accordingly is not persuaded by petitioner's futility argument.

***Alleged Unavailability of State Remedies***

Petitioner similarly contends that the exhaustion requirement should be excused under 28 U.S.C. § 2254(b)(1)(B)(i) because there allegedly is an absence of available state corrective process, once again

---

[27] *See,e.g., Mitchell v. State*, 149 P.3d 33, 36 (Nev. 2006)("A petitioner can overcome the bar to an untimely or successive petition by showing good cause and prejudice."); *see also Robinson v. Ignacio*, 360 F.3d 1044, 1052 n.3 (9th Cir. 2004)(recognizing that Nevada's cause and prejudice analysis and the federal cause and prejudice analysis are nearly identical).

[28] *See,e.g., Mitchell*, 149 P.3d at 36 ("Even when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or successive petition, habeas relief may still be granted if the petitioner can demonstrate that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent," *citing Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

[29] *Accord Jones v. McDaniel*, 2009 WL 890915 (9th Cir., Apr. 2, 2009)(in an unpublished disposition, holding that the petitioner had not established futility of exhaustion given the substantial similarity of Nevada state and federal standards to overcome a procedural bar). Petitioner's reliance upon the decision in *Phillips v. Vasquez*, 56 F.3d 1030, 1036 (9th Cir. 1995), is misplaced. *Phillips* was a capital case where the petitioner sought to present fully exhausted claims challenging his conviction while proceedings in the state courts still were ongoing regarding his sentence, following more than fifteen years of state court litigation with no end in sight. The appeals court held that the petitioner could pursue the exhausted claims seeking to challenge the conviction notwithstanding the continuing state proceedings regarding his sentence, given the extraordinarily long delays involved. *Phillips* has nothing to do with the present case.

on the basis that the state courts would not be sympathetic to his claims because they denied relief previously and that the state courts would find the claims procedurally barred. The Court rejects this argument substantially for the reasons discussed above in addressing petitioner's futility argument

### *Allegedly Ineffective State Remedies*

Petitioner contends that the exhaustion requirement should be excused under 28 U.S.C. § 2254(b)(1)(B)(ii) because circumstances allegedly render the state court process ineffective to protect the rights of the petitioner. He contends that "the Nevada Supreme Court's dismissal of both Mr. Kieren's appeals . . . demonstrates the state courts' inadequate protection of Mr. Kieren's right to due process."[30]

Rulings against a petitioner in prior proceedings do not inherently render state remedies either inadequate or ineffective. The state courts simply ruled against petitioner on the claims and arguments that he presented to them. If petitioner has other federal constitutional challenges to his conviction that he did not present to the state courts, the exhaustion doctrine and federal-state comity require that he present those claims to the state courts in the first instance. He did not do so here. The exhaustion requirement cannot be avoided merely because the state courts rejected other claims by a petitioner in prior proceedings. Petitioner's effort to bootstrap the prior rejection of his other claims into an ineffectiveness of state court process for purposes of 28 U.S.C. § 2254(b)(1)(B)(ii) is singularly unpersuasive.

Accordingly, the petition is subject to dismissal as a mixed petition because Grounds 1, 3, and 4 are not exhausted and Ground 7 is not exhausted to the extent that Ground 7 is based upon the alleged errors claimed in Grounds 1, 3 and 4. The entire petition therefore must be dismissed without prejudice unless petitioner dismisses the unexhausted claims and/or seeks other appropriate relief.

With regard to petitioner's general request for an evidentiary hearing on issues on the motion to dismiss, petitioner has not presented issues or non-conclusory material facts that would warrant an evidentiary hearing.

////

---

[30] #30, at 23.

1    IT THEREFORE IS ORDERED that respondents' motion (#27) to dismiss is GRANTED IN PART, consistent with the remaining provisions set forth below. The Court holds that the following grounds (hereafter, the "unexhausted claims") are not exhausted: (a) Grounds 1, 3 and 4; and (b) Ground 7 to the extent that Ground 7 is based upon the alleged errors claimed in Grounds 1, 3 and 4.

   IT FURTHER IS ORDERED that petitioner shall have thirty (30) days from entry of this order within which to file a motion for dismissal without prejudice of the entire petition, for partial dismissal only of the unexhausted claims, and/or for other appropriate relief. Any motion filed must contain or be accompanied by, either contemporaneously or via a document filed within ten (10) days thereafter, a signed declaration by petitioner under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested from the Court. The entire petition will be dismissed without prejudice for lack of complete exhaustion if a motion and/or the verification is not timely filed.

   IT FURTHER IS ORDERED that respondents may file a response to any such motion filed, and petitioner may file a reply, within the normal time limits provided for in Local Rule LR 7-2, but running initially from the filing of the verification rather than the motion.

   DATED this 17th day of March, 2010.

   _____
   LARRY R. HICKS
   UNITED STATES DISTRICT JUDGE